# Robbolatto, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—Right angle collision—Wagon—Contributory negligence—Nonsuit.*

In an action against a street railway company for injuries resulting from a collision between a trolley car and a wagon, a nonsuit was properly entered where it appeared from the testimony of the driver, that he had not looked until after he had committed himself to crossing the tracks, and that if he had looked he must have seen the car close at hand and approaching at a high rate of speed, and that it would probably strike him before he could accomplish the crossing.

Argued Jan. 10, 1916. Appeal, No. 374, Jan. T., 1915, by plaintiff, from final order of C. P. No. 1, Philadelphia Co., March T., 1913, No. 3308, refusing to take off nonsuit, in case of Antonio Robbolatto v. Philadelphia

Rapid Transit Company.   Before BROWN, C. J., MES-
TREZAT, STEWART, FRAZER and WALLING, JJ.   Affirmed.

Trespass to recover damages for injuries to plaintiff's
person and wagon.

The facts appear in the following opinion of SHOE-
MAKER, J., sur plaintiff's motion to take off nonsuit:

In this action the plaintiff sought to recover damages
from the defendant for injuries sustained by the alleged
negligence of the defendant in colliding its car with the
plaintiff's wagon at Thirteenth and Kimball streets, in
the early evening of December 17, 1912.

The plaintiff was driving a team of horses attached to
a large covered top express wagon, in which were boxes
of macaroni weighing about twenty-six hundred pounds.
The length of the wagon from the end of the pole was
twenty to twenty-one feet.   Sitting beside the plaintiff,
who was driving, was an employee named Sciotti.

As the team and wagon were proceeding west on Kim-
ball street, and had reached Thirteenth street, plaintiff
looked, from his seat on the wagon, south at a point
about the house-line of Thirteenth street, and seeing the
trolley car of the defendant at Washington avenue al-
most at a stop, with the conductor off the car, proceeded
to drive across Thirteenth street.   At the first rail of the
car track he said he looked again and saw the car at
about League street, ninety to one hundred feet south
of him, and he kept on and had nearly cleared the west
track when the left back wheel of his wagon was struck
by the car, his wagon overturned and plaintiff and
Sciotti thrown to the ground.

Kimball Street is thirty feet wide with a cartway of
fourteen feet.   It is about ninety to one hundred feet
north of League street, and the latter is about the same
distance north of Washington avenue.   The sidewalk of
Thirteenth street is ten to twelve feet wide.   There are
about twelve feet of the cartway of Thirteenth street east

of the east track of the defendant company, and the distance between the rails of the tracks is five feet.

The position of plaintiff's team when he first looked, must have been with the horses' heads at about the curbline of the east side of Thirteenth street. The plaintiff testified, when the team was at this position, he saw the car at Washington avenue, about two hundred feet distant. When he looked again his horses must have traveled about twelve feet to reach the east rail of the track, and the car had then reached League street, about ninety to one hundred feet distant. The plaintiff then drove upon the track and had gone about twenty-five or twenty-six feet when the car struck the rear left wheel of his wagon. In other words, while he covered twenty-five feet the car traveled ninety to a hundred feet. Kimball and League streets are not principal streets at which cars stop for passengers.

The plaintiff testified: "When I got to the corner of Thirteenth and Kimball, I looked to see as to whether the road was clear. I got to the house-line there and I looked and I saw that the car was at Washington avenue near the railroad tracks......It was below—it was to the south. The conductor was off the car, he was looking along the tracks......It was on the south side of the tracks. The car was going along slowly (page 5a). When I first saw the car it was at Washington avenue. I started to cross. As the horses were near the track, I again looked and the car was within the first rail. The car was then at League street......When I saw that the car was that distance, I kept on crossing, as I said, and all at once I felt the car jolt into my wagon—knocked into my wagon and hit the left wheel—and my wagon was overturned" (page 6a).

On cross-examination plaintiff was asked if he had testified in the suit brought by Sciotti in Common Pleas No. 2, to recover damages caused by the same accident as follows: "Q.—The second time you looked was when the wagon was in the track? A.—Half of the wagon had al-

ready passed the track. Q.—That was the second time you looked? A.—Yes, sir," he replied that he had, but it was a mistake (page 10a). He was then asked, "Q.— Then you say that the second time you looked this car had crossed those tracks at Washington avenue and was coming up Thirteenth street approaching Kimball street? A.—The wagon is a covered wagon, and of course, after I had gotten in the tracks, my duty was to look ahead. I couldn't look through the covering of the wagon. Q.—Now, your first look was when the seat was at the house-line, wasn't it? A.—I looked the first time, yes, sir. Q.—And the second time when your horses were just on the rail, according to your statement to-day? A.—Yes, sir" (page 11a).

Tricomi, a witness for plaintiff, testified the car was running fast. "It was going at a 'supreme' rate of speed. Some cars go slower, some cars go easier. This car that did this damage was going fast as fast could be." "I saw the car first on the railroad tracks there at Washington avenue......I just saw the car as it was crossing the railroad tracks. It was coming north. I then heard the noise of a wagon coming from some direction, but I did not see it because it was coming along Kimball street. I saw the wagon when it reached the line there at Thirteenth street. I saw the horses' heads. Then I saw the car coming from Washington avenue at full speed. The wagon was loaded—it was going along slowly, because it was pretty heavy. The wagon had almost passed the track when the car struck it. The car barely touched it and turned the wagon—spinned the wagon around—spinned it around to the sidewalk and the macaroni all fell out and the two men who were in the wagon also fell to the ground." The car "stopped (after striking the wagon) at the corner of a small street called Mott street......about ninety or a hundred feet above Kimball street (pages 13a and 14a).

Tricomi also testified that he first saw the car coming up Thirteenth street at Washington avenue "right there

on the tracks"—and the time he first saw the horses' heads at Kimball street the car was between League street and Washington avenue; and the distance between Washington avenue and League street is ninety to a hundred feet, and at that time "the horses were going across the track" (page 15a).

The nonsuit was properly entered in this case by the trial judge, because the plaintiff did not look immediately before crossing the tracks, he having testified on cross-examination (page 11a), that his horses were just on the rail when he looked, which was after he had committed himself to the crossing. This testimony seemed to be a compromise between what he testified in chief, "As the horses were near the tracks, I again looked and the car was within the first rail. The car was then at League street," (page 5a), and his testimony in the Sciotti case that the half of the wagon had already passed the track when he looked the second time: Moser *v.* Union Traction Co., 205 Pa. 481; Timler *v.* Philadelphia Rapid Transit Co., 214 Pa. 475.

If, however, the plaintiff did look immediately before driving on to the tracks, he must have seen that the car, according to his testimony, had traveled a hundred feet from the place where he first saw it, when looking from his wagon at the house-line of Kimball street, while he had traveled twelve feet from the curb-line to the track, and known that he would have to cover a distance of twenty-six feet to clear the track before the car reached him. To drive on the track was, therefore, taking a risk of a collision, and to depend wholly upon the motorman of the car to avoid one.

In our judgment this was contributory negligence on the part of the plaintiff, and the nonsuit was properly entered: Hicks *v.* Philadelphia Rapid Transit Co., 53 Pa. Superior Ct. 174; Mease *v.* Union Traction Co., 208 Pa. 434; Dunlap *v.* Philadelphia Rapid Transit Co., 248 Pa. 130.

The trial judge entered a compulsory nonsuit, which

the .court in banc subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Peter M. MacLaren,* for appellant.

*Sydney Young,* for appellee.

PER CURIAM, March 6, 1916:
This judgment is affirmed on the opinion of the court below refusing to take off the nonsuit.
Judgment affirmed.